UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL CASE NO. |
| | : | 3:13-CR-229 |
| v. | : | |
| | : | |
| JONATHAN BOHANNON, | : | DECEMBER 15, 2014 |
| Defendant. | : | |

**RULING RE: MOTION TO SUPPRESS STATEMENT (Doc. No. 398)**

**I.    INTRODUCTION**

Defendant Jonathan Bohannon filed a Motion to Suppress Statement (Doc. No. 398) on November 21, 2014.[1]  On November 13, 2014, the court had held an evidentiary hearing on Bohannon's Motion to Suppress Evidence (Doc. No. 134). Based on the evidence presented at the hearing, counsel for Bohannon raised an objection regarding statements Bohannon made after he was arrested.  The court then instructed the parties to file memoranda on the issue.  Before Bohannon filed the instant Motion and his supporting Memorandum (Doc. No. 399), the government filed an Anticipatory Response (Doc. No. 381) addressing the issue.

For the reasons that follow, the court denies Bohannon's Motion.

**II.    BACKGROUND AND FACTUAL FINDING**

The court more fully set forth the events that occurred the morning of Bohannon's arrest in its Ruling on Bohannon's Motion to Suppress Evidence.  See Ruling re: Motion

---

[1] The court notes that the deadline for filing substantive motions was June 9, 2014.  Minute Entry for Proceedings Held on February 28, 2014 (Doc. No. 68).

1

to Suppress Evidence (Doc. No. 432). The court briefly recites only the facts necessary to decide the instant Motion.

On December 5, 2013, an arrest team entered Shonsai Dickson's second floor apartment, located at 34 Morgan Avenue, Bridgeport, Connecticut, to arrest Bohannon. The officers did not have a search warrant or consent to enter Dickson's residence; they had only an arrest warrant for Bohannon. In the apartment, the arrest team found Bohannon lying in Dickson's bed. As the officers arrested Bohannon, they saw crack cocaine under the bed in which Bohannon had been lying and next to which he was then standing. After officers put Bohannon in handcuffs, they brought him out of the bedroom and into the apartment's kitchen. At about the same time, they led Dickson to her dining room.

After officers brought Bohannon into the kitchen, the leader of the arrest team, Special Agent ("SA") Ryan James of the Federal Bureau of Investigation (the "FBI") explained to Bohannon why he was under arrest and that the officers would be informing him of his Miranda rights. Another officer administered those rights as SA James stood by. Bohannon then signed a form acknowledging that he had been informed of his Miranda rights.

Within a few minutes of being read his Miranda rights, Bohannon indicated to SA James that the apartment was Dickson's residence. SA James then proceeded to the dining room to speak with Dickson and to obtain her consent to search the apartment. SA James informed Dickson that crack cocaine had been found during a search incident to Bohannon's arrest. Upon learning that the drugs had been found, Dickson gasped and put her head down. Dickson testified that the officers informed her that she

and her sister could be arrested and that the officers would obtain a search warrant if she did not consent. While SA James only testified to informing Dickson that she could be arrested based on what was found, other officers were present with Dickson. The court credits Dickson's testimony and finds that one of the other officers told her about their ability to obtain a search warrant or to arrest her sister. Upon learning that she and her sister could be arrested, Dickson became upset. In response, Bohannon shouted a confession that he owned the contraband. Dickson gave consent for the officers to search the apartment verbally and on a consent form.

After Dickson signed the consent form, the officers searched her apartment and found guns, ammunition, crack cocaine, cash, and a digital scale.

### III.  DISCUSSION

Bohannon seeks to suppress his confession that the evidence obtained in Dickson's apartment belonged to him. He makes two arguments in support of his Motion. First, he argues that he was interrogated without the benefit of a Miranda warning. Second, he argues that, even if his statement did follow a Miranda warning, his statement was not voluntary.

    A.    Bohannon Was Advised of His Rights Before His Confession

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that "an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during the interrogation." Id. at 471. For the purposes of Miranda rights, an "interrogation" includes "express questioning or its functional equivalent," which includes "words or actions that the police should have known were reasonably likely to elicit an incriminating response." Rhode Island v. Innis,

446 U.S. 291, 300–03 (1980).  Miranda rights may be waived if the government can show "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995).  A defendant voluntarily relinquishes her rights "when the relinquishment is the product of a free and deliberate choice rather than intimidation, coercion, or deception." United States v. Male Juvenile (95-CR-1074), 121 F.3d 34, 41 (2d Cir. 1997) (internal quotation marks omitted).

  Here, Bohannon waived his Miranda rights before he made his statement.  The court credits SA James's testimony that Bohannon was not questioned before the officers administer the Miranda form and that he did not even proceed to Dickson to seek her consent until after Bohannon had signed the Miranda form.  This is consistent with SA James's testimony that he entered the house at about 6:15 a.m., and with Bohannon's Miranda form, which indicates that it was completed at 6:20 a.m.  See Gov't Ex. 19.  This timing is also consistent with the testimony that Bohannon was removed from the bedroom first and that Dickson was allowed to go to her bathroom to brush her teeth before she was brought into the dining room and SA James approached her and sought her consent.  The testimony suggests that SA James was the first to inform Dickson of the crack cocaine, to ask her consent to search, and to advise her that she could be arrested.  This is the earliest time that Bohannon could have confessed, and at that point, he had already signed his Miranda form.[2]

---

[2] Additionally, for the reasons stated in Part III.B., infra, Bohannon's confession was not given in response to police interrogation or coercion.  Because Miranda rights only apply to statements made in response to interrogation, his confession cannot be suppressed.

4

### B. Bohannon's Confession Was Voluntary

Bohannon argues that, even if his confession came after a proper Miranda warning, his confession was the result of the officers' threat of arresting Dickson. "A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given." United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991). To determine whether a confession was the product of voluntary choice, on the one hand, or as a result of police coercion, on the other, a court must consider the "totality of all the surrounding circumstances, including the accused's characteristics, the conditions of the interrogation, and the conduct of law enforcement officials." Id.; see also United States v. Okwumabua, 828 F.2d 950, 953 (2d Cir. 1987) ("There are various factors to be considered in making a determination of voluntariness—they include the type and length of questioning, the defendant's physical and mental capabilities, and the government's method of interrogation.").

Bohannon's confession was voluntary. Bohannon was no stranger to the law. He had been arrested on several occasions, and he was likely aware of the consequences that such a confession would have. The length and type of questioning did nothing to make Bohannon's consent involuntary. This is not a case where the police questioned him for hours or sought statements at gunpoint; in fact, no guns had been drawn at all. Not surprisingly, Bohannon does not complain about any of the officers' questions, comments, or actions directed at him. Further, the timing of the events suggests that Bohannon made the confession within minutes of receiving his Miranda rights, and those rights would have still been fresh in his mind.

As the court acknowledged in its prior Ruling, Bohannon may have been prompted to make the confession as a result of the officers informing Dickson that she could be arrested.  However, the court does not believe that such officers' conduct can be said to have been coercive such that Bohannon's will was overborn.  Moreover, it is undisputed that the officers did not make this threat directly to Bohannon, e.g., by telling him that Dickson would be arrested if he did not confess.  Indeed, Bohannon's confession was not made in response to anything the officers said to him.  There is no evidence that the officers' statements to Dickson were made with the intent to cause Bohannon to confess.  Moreover, in bringing Dickson to another room of the apartment and informing her that she and her sister could be arrested, the officers did nothing that they should have known was reasonably likely to illicit a confession from Bohannon. Cf. Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (holding that a confession is valid even without the benefit of a Miranda warning unless made in response to police conduct that the police should have known was reasonably likely to elicit an incriminating response from the suspect).  In the totality of the circumstances, the court concludes that Bohannon's confession was voluntary.

In support of his argument, Bohannon relies on United States v. Ortiz, 943 F. Supp. 2d 447 (2013), which explains that the "Second Circuit has never squarely addressed whether a threat to arrest a suspect's family member renders that suspect's confession involuntary." Id. at 456.  However, Ortiz goes on to state that other circuit courts and district courts in the Second Circuit have concluded that "such a threat does not render a confession involuntary *if* the police have probable cause to arrest the family member and thus could lawfully carry out the threat." Id.

The court has determined in its prior Ruling that the officers did not have probable cause to arrest Dickson.  Nonetheless, Ortiz is different from this case in an important way.  Ortiz involved an officer's comments to the defendant that strongly implied that a confession would prevent his or her loved ones from being arrested.  See id. at 452 (quoting the officer as stating to the defendant, "There are several options available to us.  One is that we are going to place everybody under arrest in the apartment" (brackets omitted)).  This was also true of cases on which Ortiz relied.  See, e.g., United States v. Finch, 998 F.2d 349, 355–56 (ruling a confession involuntary when made after the "defendant was told that if any cocaine were discovered, [he, his mother, and his girlfriend] could be arrested unless one person admitted sole ownership" (emphasis added)); United States v. Bolin, 514 F.2d 554, 560 (7th Cir. 1975) (ruling a confession involuntary when "assurance that the girl friend would not be arrested if the consent was given").

In this case, no such implication was present.  Bohannon was in a separate room when the officers informed Dickson that she and her sister might be arrested.  Indeed, the officers made no statement to Bohannon regarding Dickson's arrest.  Of course, it is possible that Bohannon overheard the officers' statements to Dickson (although the court views it as more likely that Bohannon was only able to hear Dickson crying in response to that statement).  However, even if he could hear the statement, the officers did not imply to Bohannon that his confession would change anything.[3]

---

[3] The court also notes that Bohannon and Dickson do not seem to have been especially close. See United States v. Jackson, 918 F.2d 236, 242 (1st Cir. 1990) (considering the fact that there was no evidence of an especially close relationship between the defendant and the person whom he was trying to aid by confessing in the voluntariness analysis).  Indeed, as the court explained in its prior Ruling, the government was unable to establish a reasonable basis that Bohannon was present in Dickson's residence, largely because of the lack of evidence of an association between him and Dickson.  Further,

7

Because the court concludes that Bohannon was advised of his <u>Miranda</u> rights before his confession and that his confession was voluntary, the court denies Bohannon's Motion.[4]

## IV. CONCLUSION

For the foregoing reasons, Bohannon's Motion to Suppress Statement (Doc. No. 398) is DENIED.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 15th day of December, 2014.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

Dickson denied that Bohannon was her boyfriend. Although he stayed overnight occasionally and would sometimes visit Dickson's apartment to eat, this does not mean that the two were so close that the officers' threat to arrest Dickson would overcome Bohannon's will in deciding to confess.

[4] The court's Ruling is based only on the arguments presented in the parties' memoranda. In light of the court's previous Ruling suppressing the evidence found in Bohannon's apartment, the court makes no determinations regarding the relevance or ultimate admissibility of the confession.