UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL CASE NO. |
| | : | 3:13-CR-229 (JCH) |
| v. | : | |
| | : | |
| JONATHAN BOHANNON, | : | MARCH 27, 2017 |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION TO RECONSIDER (DOC. NO. 699)**

**I.     INTRODUCTION**

The defendant, Jonathan Bohannon ("Bohannon"), moves the court to reconsider its prior determination that Bohannon lacked a privacy interest in the Toyota Camry belonging to his friend, Shonsai Dickson ("Dickson"), at the time law enforcement officials searched the Toyota; and that Bohannon thus could not challenge the legality of the search.  See Def.'s Mot. to Reconsider (Doc. No. 699) at 1; see also United States v. Bohannon, 67 F. Supp. 3d 536, 542–43 (D. Conn. 2014).  For the reasons that follow, Bohannon's Motion to Reconsider is **DENIED**.

**II.    BACKGROUND**

Bohannon was arrested inside Dickson's second-floor apartment, on the morning of December 5, 2013.  See, e.g., United States v. Bohannon, 824 F.3d 242, 245 (2d Cir. 2016).  Bohannon had slept over Dickson's apartment the night before.  See id. at 248 n.8.  At the time of Bohannon's arrest, law enforcement officials seized drugs, money, a scale, three firearms, and ammunition from Dickson's apartment; they also seized a

firearm from her Toyota.  See id. at 247.

Bohannon moved to suppress the evidence seized from Dickson's home.  See Mot. to Suppress (Doc. No. 134) at 1.  Bohannon's Motion to Suppress and initial supporting papers did not explicitly mention the search of the Toyota Camry, nor did they argue that Bohannon had a privacy interest in the Camry.  See id.; Mem. in Supp. of Mot. to Suppress (Doc. No. 134-1); Bohannon Aff. (Doc. No. 134-2); Second Mem. in Supp. of Mot. to Suppress (Doc. No. 362); Third Mem. in Supp. of Mot. to Suppress (Doc. No. 409).  At the suppression hearing held on November 13, 2014, however, defense counsel stated that he believed the search of Dickson's Camry was also improper.  See Nov. 13, 2014 Tr. (Doc. 411) at 178.  On December 4, 2014, Bohannon elaborated on this view in his Fourth Memorandum in Support of his Motion to Suppress (Doc. No. 416).  See Fourth Mem. in Supp. of Mot. to Suppress at 24 (arguing that search of Toyota was tainted by initial unlawful entry into Dickson's home and that Dickson's consent to search Toyota was involuntary due to same circumstances that, according to defense counsel, made Dickson's consent to search her home involuntary).

At the suppression hearing, Dickson testified that, although Bohannon had been borrowing her Camry on the day before he was arrested, he gave Dickson back her Camry on the evening of December 4, 2013, the night before his arrest.  See Tr. at 60 ("That's why he met up so he can take the rental and I can take my car."); 62 ("He just brought me my car.").  Dickson testified that Bohannon thus stopped using her Camry on the evening before his arrest, and that the car remained parked in front of Dickson's home from the evening before Bohannon's arrest until the morning, when the arrest and

search occurred.  See id. at 87.  Defense counsel argued to the court at that Dickson's testimony "shows that Mr. Bohannon did not have control of the [Camry] past 9:30 p.m. or 9:00 p.m. the night before the [ ] search," and stated that the Government had "no evidence that Mr. Bohannon ever used [the Camry] whatsoever."  Id. at 162–63.

This court suppressed all evidence seized from Dickson's home, finding that Dickson had not voluntarily consented to the search of her apartment.  See Bohannon, 824 F.3d at 247; see also Bohannon, 67 F. Supp. 3d at 543.  However, this court did not suppress the evidence seized from Dickson's Toyota, because Marshall had no reasonable expectation of privacy in the Toyota.  See Bohannon, 824 F.3d at 247; Bohannon, 67 F. Supp. 3d at 542–43 ("With respect to the search of Dickson's Toyota Camry, the court concludes that Bohannon cannot challenge the legality of that search because he had no privacy interest in the car.").

### III.   DISCUSSION

#### A.   Untimeliness

As Bohannon admits, the Motion to Reconsider is untimely.  See Second Mem. in Supp. of Def.'s Mot. to Reconsider (Doc. No. 702) at 10.  Under the District of Connecticut Local Rules of Criminal Procedure, a party must file a motion for reconsideration within fourteen days of the ruling of which the party seeks reconsideration.  See D. Conn. Local R. Crim. P. 1(c) ("The following Local Civil Rules shall apply in criminal proceedings: . . . 7(c) (Motions for Reconsideration)."); D. Conn. Local R. Civ. P. 7(c)(1) ("Motions for reconsideration shall be filed and served within fourteen (14) days of the filing of the decision or order from which such relief is sought.").  The court issued the Ruling of which Bohannon seeks reconsideration on December 15, 2014.  Bohannon, 67 F. Supp. 3d 536.  Over two years had passed since

that date, when, on February 3, 2017, Bohannon moved for reconsideration.  See Def.'s Mot. to Reconsider.

Defense counsel initially argued that good cause existed for permitting a late Motion to Reconsider.  See id. ¶ 17.  A court may extend a time limit if good cause is shown.  See D. Conn. Local R. Crim. P. 1(c) ("The following Local Civil Rules shall apply in criminal proceedings: . . . 7(b) (Motions for Extension of Time)"); D. Conn. Local R. Civ. P. 7(b)(2) (allowing court to extend time upon showing of good cause).  But see Collins v. Blumenthal, 581 F. Supp. 2d 289, 291 (D. Conn. 2008) ("Even if [the] motion for reconsideration were construed to include, sub silentio, a motion for extension of time, no 'good cause' for [the] delay has been offered as required."); Buster v. City of Wallingford, No. 3:07 CV 544 (JBA), 2008 WL 2782731, at *1 (D. Conn. July 7, 2008) (absent good cause, denying nunc pro tunc extension of time for motion to reconsider).

However, good cause does not exist.  Bohannon initially believed that good cause exists because, four days after the Ruling, the United States ("the Government") filed an interlocutory appeal of the Ruling.  See Def.'s Mot. to Reconsider ¶ 17(B).  Bohannon believed that, "[o]nce the Government filed its appeal," he "was without a vehicle whereby he could" move for reconsideration, "as the jurisdiction was now vested in the Second Circuit Court of Appeals."  Id. ¶ 17 (D).

Now, however, Bohannon concedes "that there is a line of cases that hold a motion for reconsideration would toll the filing of the notice of appeal," and that this "motion for reconsideration could have been timely filed within fourteen (14) days of this Court's decision on December 15, 2014, as the Court was not divested of jurisdiction."  Second Mem. in Supp. of Def.'s Mot. to Reconsider at 8–9.

Indeed, "the consistent practice in civil and criminal cases alike has been to treat timely petitions for rehearing as rendering the original judgment nonfinal for purposes of appeal for as long as the petition is pending." United States v. Dieter, 429 U.S. 6, 8 (1976); see also United States v. Ibarra, 502 U.S. 1, 6 (1991) ("[A] motion for rehearing in a criminal case, like a motion for rehearing in a civil case, renders an otherwise final decision of a district court not final until it decides the petition for rehearing."). As a result, "the pendency of an appeal does not divest a district court of jurisdiction over [a] motion for reconsideration." Malcolm v. Honeoye Falls-Lima Cent. Sch. Dist., 757 F. Supp. 2d 256, 257 (W.D.N.Y. 2010); Coan v. Kaufman, 349 F. Supp. 2d 271, 273 n.1 (D. Conn. 2004) (holding that notice of appeal "does not divest this Court of jurisdiction to rule on [a] Motion for Reconsideration"), aff'd, 457 F.3d 250 (2d Cir. 2006). Rather, "the jurisdiction-divesting effect of a notice of appeal is nullified, and the district court is permitted to address the motion." Malcolm, 757 F. Supp. 2d at 258.

For instance, the Second Circuit has explained that "the filing of a notice of appeal does not divest the district court of jurisdiction to decide any of the postjudgment motions listed in Fed. R. App. P. 4(a)(4)(A), if timely filed." Hodge ex rel. Skiff v. Hodge, 269 F.3d 155, 157 n.4 (2d Cir. 2001). Federal Rule of Appellate Procedure 4(a)(4)(A) includes motions under the Federal Rules of Civil Procedure to make additional factual findings, to alter or amend judgment, for new trial, and for relief from judgment or order. See Fed. R. App. P. 4(a)(4)(A). Similarly, in the criminal context, the Eighth Circuit has explained that, "the filing of the motion for reconsideration reinvest[s] jurisdiction in the district court," after a notice of appeal. United States v. Ridl, 26 F.3d 73, 75 (8th Cir. 1994).

Because, despite the Government's notice of appeal, Bohannon could have moved for reconsideration within fourteen days of this court's Ruling, Bohannon has not shown good cause for failing to move to reconsider within the window set by the Local Rules. Bohannon's Motion to Reconsider is denied on this basis.

B.      Additional Evidence

Even if this court were to overlook the untimeliness of the Motion, however, defense counsel has failed to provide a valid basis for reconsideration.

"The standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." United States v. Samia, No. S9-13-CR-521-LTS, 2017 WL 980333, at *2 (S.D.N.Y. Mar. 13, 2017) (internal quotation marks omitted) (quoting Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012)).

Here, Bohannon moves for reconsideration on the basis of purportedly newly-discovered evidence. See Def.'s Mot. to Reconsider ¶ 12. Bohannon argues that reconsideration should be granted because, after the Ruling, defense counsel discussed Bohannon's use of the Toyota Camry with Dickson and received new information from Dickson, which suggested to defense counsel that Bohannon may have had a privacy interest in the Toyota.[1]  Mem. in Supp. of Def.'s Mot. to Reconsider

---

[1] In certain contexts, an individual who borrows a car may have a privacy interest in that vehicle. See United States v. Pena, 961 F.2d 333, 337 (2d Cir. 1992) ("It is not the law[ ] that only the owner of a vehicle may have a Fourth Amendment privacy interest therein that is protected against governmental invasion. Rather, the borrower of an automobile can possess such an interest.")  "[T]he issue" that decides the question "is whether the claimant had a reasonable expectation of privacy in the area of the vehicle searched." Id., 961 F.2d at 337 (internal quotation marks omitted).

(Doc. No. 699-1) at 6.  Specifically, defense counsel represents that, through conversations with Dickson, "it became apparent that on December 5, 2013 [ ] Mr. Bohannon planned to use the Toyota Camry," and "that Ms. Dickson gave Mr. Bohannon explicit permission to use the Camry." Id. at 6.

However, Bohannon has failed to demonstrate that this evidence is truly newly-discovered.

> When a party asserts that new evidence requires reconsideration of a prior decision, the proponent must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered.  The party moving for reconsideration based on the newly discovered evidence must show that [ ] the proffered evidence was unavailable despite the exercise of due diligence by the movant in procuring evidentiary support.

Prestige Jewelry Int'l v. BK Jewellery HK, No. 11-CV-2930 (LAP), 2015 WL 8481873, at *2 (S.D.N.Y. Oct. 14, 2015) (internal quotation marks omitted) (quoting In re Rezulin Prod. Liab. Litig., 224 F.R.D. 346, 350 (S.D.N.Y. 2004)).  This rule applies in criminal cases.  See United States v. Posada, No. 12 CR. 859 (VM), 2016 WL 4939079, at *2 (S.D.N.Y. Sept. 7, 2016) ("For evidence to be considered newly available, it must be evidence that was truly newly discovered or could not have been found by due diligence." (internal quotation marks omitted)).  "A motion to reconsider is not petitioner's opportunity to put forward evidence that he could have, but failed, to provide the Court when the Court initially considered the motion." Id. at *2 (internal quotation marks omitted).  The rule also applies to motions to reconsider under the District of Connecticut local rules.  See Wilmington Sav. Fund Soc'y, FSB v. Universitas Educ., No. 3:15-CV-911 (VLB), 2017 WL 945019, at *1 (D. Conn. Mar. 9, 2017).

The only explanation offered for why defense counsel could not discuss the

Toyota with Dickson before the suppression hearing, and thus before the Ruling, is that defense counsel did not know "that the Court would bifurcate its ruling between the residence and the Toyota Camry." Def.'s Mot. to Reconsider at 2. The court does not consider this proffered reason to be sufficient, for multiple reasons. First, it was defense counsel's responsibility to prepare fully for the suppression hearing—including by considering the differing legal implications that might apply to the search of a home, where Bohannon spent the night and was still present while arrested, versus a borrowed car, which Bohannon had parked outside and had not driven since the night before. Second, when the court questioned defense counsel regarding the legality of the search of the Toyota at the suppression hearing, see Tr. at 178, defense counsel was effectively put on notice that the court was considering the legal implications of the search of the Toyota as a separate matter from the legal implications of the search of Dickson's apartment. Third, defense counsel addressed the legality of the search of the Toyota in his Fourth Memorandum in Support of his Motion to Suppress, which, although after the suppression hearing, was filed before the court's Ruling. Defense counsel thus was clearly aware that the legality of the search of the Toyota was an important issue, before this court made its Ruling. Even if defense counsel needed to gather additional information regarding to the Toyota after the hearing, there is no reason that defense counsel needed to wait until after the court's Ruling before gathering the new information and moving the court to consider the new information. It would have been preferable for Bohannon to move for permission to submit additional evidence and additional briefing, rather than for him to wait for the court to issue a Ruling and then move the court to reconsider its Ruling.

The court concludes that Bohannon has failed to demonstrate that the evidence he now seeks to offer—Dickson's testimony that, in fact, Bohannon was planning to continue using the Toyota after he parked it outside her house— "was unavailable despite the exercise of due diligence by the movant in procuring evidentiary support." Prestige Jewelry, 2015 WL 8481873, at *2.  Defense counsel has not offered any valid reason that he could not have asked Dickson for details about Bohannon's borrowing of the Toyota before the hearing, nor has he offered a reason why Bohannon himself could not simply provide this information to defense counsel at an earlier time.  The fact that the evidence is not truly newly-discovered provides a second, independent basis upon which Bohannon's Motion to Reconsider is denied.

Furthermore, the court notes that, if Dickson were to testify to the effect that defense counsel suggests, Dickson would appear to contradict her earlier testimony that Bohannon had come to her house for the purpose of returning her Camry to her.  Even if the court were to reconsider its previous Ruling, it is not at all clear that the defense attorney's description, presumably in good faith, of what Dickson told him outside of court would be sufficient to disturb the court's prior Ruling, which the court made after considering Dickson's sworn testimony.

### IV.  CONCLUSION

For the reasons set forth above, Bohannon's Motion to Reconsider (Doc. No.

699) is **DENIED**.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 27th day of March, 2017.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge